IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| REGINALD A. OLIPHANT | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | CASE NO. 12-70668 |

| | |
|---|---|
| JUDY A. ROBBINS, | ) |
| UNITED STATES TRUSTEE | ) |
| FOR REGION FOUR, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) |
| | ) |
| MARK JENNINGS and | ) |
| FINANCIAL ASSOCIATES | ) |
| ENTERPRISE MARKETING, INC., | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

The matter before the Court is the United States Trustee's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 110, 526, and 527 Requiring the Disgorgement of Fees Received, Payment of Damages to the Debtor, and Imposition of Fines ("the Motion"). For the reasons set forth below the Court will grant the U.S. Trustee's Motion.

This Memorandum Opinion sets forth this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

FINDINGS OF FACT

This case presents yet another circumstance of a vulnerable and unsophisticated debtor preyed upon by an unscrupulous financial advisor, this time wearing the cloak of a de facto

bankruptcy petition preparer.  Not unlike *In re Falck*, 503 B.R. 904 (Bankr. S.D. Fla. 2014), "[this] case reeks of fraudulent, misleading, unfair, and deceptive conduct towards the Debtor, . . . the United States Trustee, and the Court."  *Id.* at 911.  Reginald A. Oliphant, the Debtor in the present case ("Oliphant"), and his wife Susan C. Oliphant retained Mark Jennings ("Jennings") and his company, Financial Associates Enterprise Marketing, Inc. ("FAEM"), for the purpose of pursuing mortgage modifications.  This, in turn, led to four consecutive bankruptcy petitions, guided by Jennings behind the scenes.  Initially Oliphant and his wife paid a deposit to Jennings on June 1, 2011.[1]  Ex. 35.  On September 26, 2011, under Jennings' guidance, Oliphant and his wife filed a joint *pro se* Chapter 13 case, which was assigned case number 11-71976.  Ex. 9. This was their first bankruptcy filing and, according to Oliphant's testimony at the hearing on February 27, 2014 ("the Hearing"), they had no previous knowledge of the requirements, procedures, or necessary documents.  Jennings instructed the Oliphants to file for Chapter 13 and provided them with the voluntary petition, which was completed in Jennings' office under Jennings' direction.  Jennings also chose the online credit counseling agency and set up the credit counseling course for the Oliphants in his office.[2]  Jennings instructed them on how to complete the Motion for Extension of Time for Payment of Filing Fee as well as the Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition.  He directed them to list $0 as the amount paid for assistance, despite the fact that the Oliphants had paid him approximately $5,000 at the time of filing.  Jennings completed the Statement of Assistance by Bankruptcy Petition Preparer, and he certified that he had been paid $0 and that $0 was the

---

[1] According to the account statement of FAEM, Oliphant and his wife made monthly payments of $1,000 from June 2011 to March 2012 for a total of $11,000.  The statement is dated May 1, 2012 and shows that Oliphant did not make a payment in April.  At the bottom of the page it states, "Approved by Mark Jennings."

[2] As will be shown below, the Debtors individually or collectively used the same credit counseling certificate three different times.  *See* Ex. 13, 18, and 22.  The same credit counselor and company were also used for the fourth filing.  Ex. 4.

2

amount still due. Ex. 12. Jennings went so far as to drive the Oliphants to the Clerk's Office to file their petition.

Jennings instructed the Oliphants to list Bank of America as their sole creditor, even though Jennings knew that the Oliphants had several other secured and unsecured creditors. When the U.S. Trustee questioned Oliphant at the Hearing as to why they only listed Bank of America, he replied that Jennings told them if they wanted to keep the property, they would have to file "on Bank of America" to give him more time to negotiate a loan modification. Following the filing of the initial documents, Jennings instructed the Oliphants to ignore mail or any other communication received from the United States Bankruptcy Court. He stated that if they continued to ignore any correspondence, then their bankruptcy case "would go away." On October 19, 2011, the Court dismissed the case for failure to cure various deficiencies including the failure to file schedules and statements and the failure to pay the filing fees.

On October 25, 2011, six days after dismissal of the joint case, Oliphant filed another *pro se* voluntary petition, which was assigned case number 11-72168. Ex. 16. This time Oliphant filed an individual case because Jennings stated that Oliphant could file individually and the bank would still work with him on the modification. Like in the previous case, Jennings provided the voluntary petition. He instructed Oliphant on what Chapter to file and how to complete the Motion for Extension of Time for Payment of Filing Fee. Jennings advised him that the credit counseling certificate obtained in the prior case could be re-used.[3] Unlike the previous case, Jennings told Oliphant to check the box that "[n]o assistance was provided" on the Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing

---

[3] Pursuant to 11 U.S.C. § 109(h)(1) the debtor must have received appropriate credit counseling within 180 days of the petition date. The September 24, 2011 certificate from Abacus Credit Counseling fell within the required time window for three of the four petitions.

Petition. Ex. 17. Oliphant admitted he knew this was not true because Jennings was assisting him.[4]

Jennings directed Oliphant to list StellarOne Bank as the sole creditor, despite knowledge that Oliphant had other creditors. Again, Jennings counseled Oliphant to ignore any correspondence from the United States Bankruptcy Court. On November 18, 2011 the Court issued an Order requiring Oliphant to appear and show cause why the case should not be dismissed on December 14, 2011. When asked by the U.S. Trustee at the Hearing if he received this Order, Oliphant responded that if he did, he would have ignored it based on Jennings' instructions. This second case was dismissed on December 14, 2011 when Oliphant failed to appear or cure the deficiencies including failure to file schedules and statements and failure to pay the filing fees.

On February 6, 2012, less than two months after the dismissal of the previous filing, Oliphant's wife filed an individual *pro se* Chapter 13 petition, which was assigned case number 12-70193. Ex. 21. When the U.S. Trustee asked Oliphant at the Hearing why his wife filed individually, he answered that they were instructed by Jennings to file a joint case, then he was to file individually, then she was to file individually, thus it was "her turn." Oliphant was present when Jennings provided his wife with the voluntary petition and when she completed and signed it at Jennings' direction. Jennings also directed Mrs. Oliphant to list StellarOne as her sole creditor. Oliphant testified this was due to the fact that StellarOne was the bank "breathing down Jennings' neck" and threatening to foreclose. Jennings instructed her to file the same credit counseling certificate from her prior joint case and told her how to complete the Motion for

---

[4] The Court found Mr. Oliphant to be a credible and forthcoming witness, yet completely trusting in the guidance he was obtaining from Mr. Jennings.

Extension of Time for Payment of Filing Fees.  Following the filing of the documents, Jennings reiterated to Mrs. Oliphant that she was to ignore all communications from the United States Bankruptcy Court.  This case was dismissed on March 2, 2012 for failure to cure various deficiencies including failure to file schedules and statements and failure to pay the filing fees.

Less than one month following the dismissal of Oliphant's wife's individual case and nearly one year after the Oliphants first retained Jennings' services, Oliphant filed the present case on April 6, 2012.  Ex. 2.  He testified that he filed because it was "his turn" according to the order of filings Jennings had determined.  When this case was filed the Oliphants had already lost four properties to foreclosure and Oliphant filed again in the hope that they would not lose the rest of their properties.  Jennings provided Oliphant with the voluntary petition.  He instructed him to file for Chapter 13 and list only StellarOne on the creditor matrix despite knowledge of Oliphant's other creditors.  Jennings directed Oliphant to complete another credit counseling course in order to obtain a new credit counseling certificate, as the first one -- used three times -- had expired.  He also counseled Oliphant to indicate that "[n]o assistance was provided" on the Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition and on how to complete and file the Motion for Extension of Time for Payment of Filing Fees.  Ex. 3.  Oliphant was again directed to ignore all mail received from the Court regarding his case, knowing full well the case would likely be dismissed for failure to complete the preliminary filing requirements.

On May 2, 2012 the Court issued an Order for Oliphant to appear and show cause why the case should not be dismissed with prejudice for failure to file required schedules and abuse of the bankruptcy process by serial filings.  However, at this point, Oliphant retained counsel and Mark A. Black, Esq. filed a Motion for Enlargement of Time to File Schedules, Statement of

Affairs, and Plan and a Motion to Impose Stay. At the Hearing Oliphant testified that he retained Mr. Black's services because he realized that Jennings could not do what he had told them he was going to do and if they kept "fooling around with him" they were going to lose everything. Oliphant estimated that the net equity of the four properties he lost in foreclosure under Jennings' guidance totaled $173,000 and they had paid Jennings between $11,000 and $12,000 in fees.[5] On May 15, 2012, Mr. Black filed an amended petition page, the balance of schedules, and a Chapter 13 Plan. An Amended Plan was ultimately confirmed on October 31, 2012.

Subsequently, on May 31, 2013, the U.S. Trustee filed a motion against Jennings in the unrelated case of *In re Brown*, case number 13-70356. The U.S. Trustee's motion filed in that case was nearly identical to the Motion before the Court in the present case. The *Brown* case presented markedly similar circumstances regarding repeated skeletal filings in order to frustrate a mortgage creditor's attempts at foreclosure. The hearing on that motion was repeatedly continued at the request of Jennings in order for him to retain counsel. A portion of the hearing was held on July 22, 2013 and was adjourned because Jennings did not want to continue without counsel. At that hearing, Ms. Brown's case was dismissed with a restriction barring filing of any *pro se* petition for 365 days; however, the dismissal was deferred pending resolution of the motion against Jennings.

The U.S. Trustee filed the Motion in the present case on September 13, 2013 alleging violations of 11 U.S.C. §§ 105, 110, 526, and 527. A pre-trial conference was set for October 7, 2013 and the U.S. Trustee's motion in the *Brown* case had been continued to that same date. Jennings appeared at that hearing and stated that he had met with four different attorneys, none of whom would take the case. He represented that he had a consultation with an attorney in

---

[5] Oliphant's testimony was that these properties were rental properties and the income was covering their expenses.

6

Northern Virginia on October 10, 2013 and asked for a continuance. The Court granted a continuance in both cases to November 12, 2013 and required Jennings to engage counsel and have such counsel file an answer no later than November 6, 2013. On November 8, 2013, Jennings filed letters in both cases requesting continuances on the basis that he had chosen an attorney to represent him, but needed additional time for the attorney to be able to file the appropriate documents. The letters were treated as motions to continue and were set for hearing on November 12, 2013. Jennings appeared on November 12, 2013 and asserted that he spoke to his attorney twenty minutes prior to the hearing, but had not yet set up a meeting to retain him. The Court entered an Order in each case that required any counsel retained by Jennings to file notices of appearance and confer with the U.S. Trustee by November 26, 2013, to set a final hearing date. If that was not done, the Motions would come back for hearing on December 9, 2013 and a final hearing date would be set regardless of whether Jennings had obtained representation. On December 9, 2013, Jennings still had not obtained representation. The remainder of the evidentiary hearing in the *Brown* case was set for December 30, 2013, and a final pre-trial conference was set in this case for January 27, 2014.

On December 23, 2013, Jennings filed a letter requesting that this case be consolidated and heard with the final portion of the *Brown* case on December 30, 2013. This request was denied due to the factual differences and the procedural posture of each case. The remainder of the hearing on the motion in the *Brown* case was concluded on December 30, 2013, the matter was taken under advisement, and a decision was rendered on January 24, 2014.[6] As to the

---

[6] In *Brown*, which was decided by the Hon. William F. Stone, Jr., this Court treated Jennings as a "first offender," found him in violation of 11 U.S.C. § 110(i)(1)(B)(i), and awarded $2,000.00 in the nature of liquidated damages to the debtor. As to §§ 110(l)(1) and (2) the Court found one violation, which fine was tripled due to his intentional failure to disclose, and fined Jennings and his company $1,500.00. As of the Hearing, the U.S. Trustee asserted her office had received no payment on the fine from Mr. Jennings and on March 31, 2013, the U.S. Trustee filed a

present case, Jennings failed to appear at the final pre-trial conference on January 27, 2014, and the matter was continued for final hearing on February 27, 2014. The continuance Order required that the parties exchange exhibit and witness lists by February 10, 2014, and also provided for admission of exhibits not previously objected to by February 17, 2014. The U.S. Trustee filed an exhibit list containing thirty-five exhibits and a witness list on February 10, 2014. The Court held an evidentiary hearing on the Motion on February 27, 2014, at which Jennings did not appear. The U.S. Trustee examined Oliphant and following the U.S. Trustee's closing argument the Court took the matter under advisement.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.

Section 110(a)(1) of the Bankruptcy Code defines a "bankruptcy petition preparer" as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing" in a bankruptcy case. 11 U.S.C. § 110(a)(1). Section 110(a)(2) states, "'document for filing' means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court. . ." 11 U.S.C. § 110(a)(2). Jennings was paid $1,000 per month in connection with a host of services provided, which included providing copies of the voluntary petition to the Oliphants

---

Certification of Non-Compliance with the Court's ruling in *Brown*. Judge Stone also found in *Brown* there "appears to be no meaningful distinction between them [Financial Associates Enterprise Marketing, Inc. and Mark Jennings], and Mr. Jennings has not made any contention to the contrary." The Court makes the same finding here.

and assisting them in completing those forms.[7] In addition, Jennings helped prepare Motions for Extension of Time for Payment of Filing Fee as well as Statements of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition. While Jennings did not complete the Statement of Assistance by Bankruptcy Petition Preparer in this case, he did on at least one occasion complete the form for the Oliphants. *See* Ex. 12. In it he stated, under penalty of perjury, that to the best of his information and belief he assisted the debtors in connection with the preparation and filing of the case and was paid $0 for his assistance. Ex. 12. This statement of no compensation was a false representation to the Court in and of itself. Although Jennings failed to disclose his involvement in the three cases to follow, his level of assistance appears consistent throughout the preparation and follow through of all the various filings. As the testimony reflects Jennings prepared a number of documents for filing in exchange for compensation, the Court finds that Jennings operated as a bankruptcy petition preparer.[8]

Section 110(b) imposes requirements on individuals acting as bankruptcy petition preparers. 11 U.S.C. § 110(b). In summary, bankruptcy petition preparers must sign the documents for filing, print their name and address, and provide certain notices before accepting fees. Section 110(c) also requires the bankruptcy petition preparer to place an identifying number on each document. 11 U.S.C. § 110(c). In the Oliphants' initial case Jennings completed and filed the Statement of Assistance by Bankruptcy Petition Preparer where he completed the name, address, telephone and social security number sections and signed the document. Except for that instance, Jennings has wholly failed to comply with the letter and

---

[7] Oliphant testified that he met Jennings through Jennings' previous occupation as an insurance agent.
[8] Jennings cannot be both tall and short. In *Brown*, he contended he was not a bankruptcy petition preparer, but Judge Stone found that he was. In Case No. 11-71976, Jennings said he was a bankruptcy petition preparer and since he provided essentially the same services throughout all four cases, the Court finds he was a bankruptcy petition preparer in each of them.

spirit of Sections 110(b) and (c). Instead he has operated underground, as an undisclosed petition preparer, while receiving thousands of dollars in fees for his services.

Section 110(e) sets forth restrictions on the services that can be offered by bankruptcy petition preparers:

> (1) A bankruptcy petition preparer shall not execute any document on behalf of a debtor.
> (2) (A) A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).
> (B) The legal advice referred to in subparagraph (A) includes advising the debtor –
> (i) whether –
> (I) to file a petition under this title; or
> (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;
> (ii) whether the debtor's debts will be discharged in a case under this title;
> (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title
> (iv) concerning –
> (I) the tax consequences of a case brought under this title; or
> (II) the dischargeability of tax claims;
> (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;
> (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or
> (vii) concerning bankruptcy procedures and rights.

11 U.S.C. § 110(e).

Based on Oliphant's testimony, Jennings advised him and his wife to file for bankruptcy, in order to avoid foreclosure, in violation of Section 110(e)(2)(B)(i)(I). He also advised them to file for Chapter 13 in violation of Section 110(e)(2)(B)(i)(II). It is unclear whether Jennings

advised the Oliphants that their debts would be discharged, but he did advise them to stop making payments on their mortgages and that they would be able to retain their properties. This advice amounts to violations of Sections 110(e)(2)(A) and (B)(iii). Jennings explicitly counseled the Oliphants on which creditors to include, and not include, on the creditor matrix in violation of Section 110(e)(2)(B)(vi). Finally he advised the Oliphants on every aspect of bankruptcy procedure from how to complete the petition to the ramifications of ignoring any further correspondence from the Bankruptcy Court regarding their case. Bluntly put, Jennings instructed Oliphant and his wife how to "game the system" and manipulate the Court with their multiple filings. These facts clearly constitute a number of violations of Section 110(e)(2)(B)(vii).

Section 110(h) provides in part:

> (3) (A) The court shall disallow and order the immediate turnover to the bankruptcy trustee any fee referred to in paragraph (2) –
> (i) found to be in excess of the value of any services rendered by the bankruptcy petition preparer during the 12-month period immediately preceding the date of the filing of the petition; or
> (ii) found to be in violation of any rule or guideline promulgated or prescribed under paragraph (1).
> (B) All fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g).
> (C) An individual may exempt any funds recovered under this paragraph under section 522(b).
> (4) The debtor, the trustee, a creditor, the United States trustee (or the bankruptcy administrator, if any) or the court, on the initiative of the court, may file a motion for an order under paragraph (3).
> (5) A bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.

11 U.S.C. § 110(h). According to Oliphant, the services provided by Jennings had negative value, in that he lost four properties to foreclosure under Jennings' guidance that he may have

otherwise saved. The Court finds that Jennings' efforts in coaching the Debtors to "game the system" have no value at all. Thus, $11,000 in fees, representing the total paid within the 12-month period preceding the petition date of the case before the Court, are found to be in excess of the value of services provided under Section 110(h)(3)(A)(i). Alternatively, all fees are forfeitable under Section 110(h)(3)(B) due to Jennings' above mentioned violations of subsections (b), (c), and (e) of Section 110.

> Section 110(i) provides for further damages:
>
>> (1) If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor –
>> (A) the debtor's actual damages;
>> (B) the greater of –
>>> (i) $2,000; or
>>> (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
>>
>> (C) reasonable attorneys' fees and costs in moving for damages under this subsection.
>>
>> (2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

11 U.S.C. § 110(i). Pursuant to this provision of Section 110, the Court *shall* order Jennings to pay Oliphant his actual damages. The Court finds Oliphant's actual damages to be $11,000.00. Additionally, the Court also finds Jennings' conduct to be fraudulent, unfair, and deceptive such that Jennings must pay the greater of $2,000 or twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services. The Court further finds that nothing of value is attributable to his bankruptcy services and thus the amount awarded under Section

110(i)(1)(B)(ii) is $22,000.00.  The U.S. Trustee did not seek attorneys' fees or costs with

respect to this Motion.

     Finally Section 110(l) sets forth:

> (1) A bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $ 500 for each such failure.
> (2) The court shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer –
>> (A) advised the debtor to exclude assets or income that should have been included on applicable schedules;
>> (B) advised the debtor to use a false Social Security account number;
>> (C) failed to inform the debtor that the debtor was filing for relief under this title; or
>> (D) prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer.
>
> (3) A debtor, trustee, creditor, or United States trustee (or the bankruptcy administrator, if any) may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.
> (4)     (A) Fines imposed under this subsection in judicial districts served by United States trustees shall be paid to the United States trustees, who shall deposit an amount equal to such fines in the United States Trustee Fund. . . .

11 U.S.C. § 110(l).  Jennings clearly failed to comply with subsection (e) in each of the four

filings.  He also failed to comply with subsections (b) and (c) in the final three filings.  The Court

finds $500.00 per violation to be the appropriate fine, and this results in ten violations at $500.00

each for a total of $5,000.00 pursuant to Section 110(l)(1).  However, pursuant to 11 U.S.C. §

110(l)(2)(D), the fine for failure to disclose his identity as a bankruptcy petition preparer on three

occasions shall be tripled resulting in a total fine of $8,000.00, which includes seven fines of

$500.00 each and three fines of $500.00 which are trebled to $1,500.00 each.  Thus, $3,500.00

plus $4,500.00 results in a total fine of $8,000.00 payable to the U.S. Trustee.  All fines and sums payable shall be due jointly and severally from Jennings and FAEM.

Although the U.S. Trustee did not request injunctive relief, the Court notes that Jennings has failed to comply with the Court's Order of January 24, 2014 in the *Brown* case.  The Court may raise the prospect of injunctive relief on its own initiative.  11 U.S.C. §§ 110(j)(2)(B) and (3).  Jennings and FAEM, not having been previously made aware that injunctive relief may be awarded against them, are entitled to notice in that regard.  *In re Graves*, 279 B.R. 266, 275-76 (9th. Cir. BAP 2002).  Accordingly, Jennings and FAEM will be directed to appear and show cause why they should not be permanently enjoined from acting, directly or indirectly, as a bankruptcy petition preparer in the Western District of Virginia at a date to be determined by the Court.

An appropriate Order will issue.

Decided this 2nd day of April, 2014.

_____
UNITED STATES BANKRUPTCY JUDGE