IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **REGINALD A. OLIPHANT** | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | CASE NO. 12-70668 |

| | | |
|---|---|---|
| **JUDY A. ROBBINS,** | ) | |
| **UNITED STATES TRUSTEE** | ) | |
| **FOR REGION FOUR,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MARK JENNINGS and** | ) | |
| **FINANCIAL ASSOCIATES** | ) | |
| **ENTERPRISE MARKETING, INC.,** | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

The matter before the Court is the United States Trustee's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 110, 526, and 527 Requiring the Disgorgement of Fees Received, Payment of Damages to the Debtor, and Imposition of Fines ("the Motion") against Mark Jennings ("Jennings") and his company, Financial Associates Enterprise Marketing, Inc. ("FAEM"). For the reasons set forth below the Court will grant the U.S. Trustee's Motion.

This Memorandum Opinion sets forth this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

FINDINGS OF FACT

Reginald A. Oliphant, the Debtor in the present case ("Oliphant"), and his wife Susan C. Oliphant, retained Jennings and FAEM for the purpose of pursuing mortgage modifications on eleven properties they owned. This, in turn, led to four consecutive bankruptcy petitions, guided by Jennings behind the scenes. Initially, Oliphant and his wife paid a deposit to Jennings on June 1, 2011.[1] Ex. 35. Oliphant testified that when he went to see Jennings at the outset, Jennings instructed him to stop making his mortgage payments. On September 26, 2011, under Jennings' guidance, Oliphant and his wife filed a joint *pro se* Chapter 13 case, which was assigned case number 11-71976. Ex. 9. According to Oliphant's testimony at the hearing on June 10, 2014, ("the Hearing") neither he nor his wife had ever filed bankruptcy and had no previous knowledge of the requirements, procedures, or necessary documents. Oliphant testified that Jennings instructed him and his wife to file for Chapter 13 and provided them with the voluntary petition, which was completed in Jennings' office under Jennings' direction. At the Hearing, Jennings disputed this point and indicated that a member of the Clerk's Office staff provided the voluntary petition and it was completed at the Clerk's Office. Jennings did admit that he chose the online credit counseling agency and set up the credit counseling course for the Oliphants in his office.[2] He also admitted that he drove the Oliphants to the Clerk's Office to file their bankruptcy.

---

[1] According to the account statement of FAEM, Oliphant and his wife made monthly payments of $1,000.00 from June 2011 to March 2012 for a total of $11,000.00. The statement is dated May 1, 2012 and shows that Oliphant did not make a payment in April. At the bottom of the page it states, "Approved by Mark Jennings." According to Oliphant's testimony, Jennings charged $2,000.00 per mortgage modification and they were seeking to modify mortgages on 11 properties.

[2] As will be shown below, the Debtors individually or collectively used the same credit counseling certificate three different times. *See* Ex. 13, 18, and 22. The same credit counselor and company were also used for the fourth filing. Ex. 4.

Oliphant testified that Jennings instructed them on how to complete the Motion for Extension of Time for Payment of Filing Fee as well as the Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition. He directed them to list $0.00 as the amount paid for assistance, despite the fact that the Oliphants had paid him approximately $5,000.00 at the time of filing. Jennings completed the Statement of Assistance by Bankruptcy Petition Preparer, and he certified that he had been paid $0.00 and that $0.00 was the amount still due. Ex. 12. Jennings contended that he was operating under a misunderstanding when he signed the Statement of Assistance and he only signed it because a member of the Clerk's Office staff provided the document to him. According to Oliphant, Jennings instructed them to list Bank of America as their sole creditor, even though Jennings knew that the Oliphants had several other secured and unsecured creditors. When the U.S. Trustee questioned Oliphant at the Hearing as to the reasoning behind only listing one creditor, he replied that Jennings told them to only list Bank of America because that was the bank attempting to foreclose. Oliphant testified that following the filing of the initial documents, Jennings directed the Oliphants to ignore mail or any other communication received from the United States Bankruptcy Court. According to Oliphant, Jennings stated that if they continued to ignore any correspondence, their bankruptcy case "would go away." On October 19, 2011, the Court dismissed the case for failure to cure various deficiencies including the failure to file schedules and statements and the failure to pay the filing fees.

On October 25, 2011, six days after dismissal of the joint case, Oliphant filed another *pro se* voluntary petition, which was assigned case number 11-72168. Ex. 16. This time Oliphant filed an individual case because Jennings told him he could file individually and the bank would still work with Jennings on the modification. Oliphant again asserted that Jennings provided the

3

voluntary petition, he completed it in Jennings' office, and Jennings instructed Oliphant on what Chapter to file as well as how to complete the Motion for Extension of Time for Payment of Filing Fee. Jennings advised him that the credit counseling certificate obtained in the prior case could be reused.[3] Oliphant testified that, unlike the previous case, Jennings told him to check the box that "[n]o assistance was provided" on the Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition. Ex. 17. Oliphant said Jennings instructed him to say no assistance was provided because if anyone knew Jennings was involved, it would create problems for Jennings. Oliphant admitted he knew that his statement "[n]o assistance was provided" was false because Jennings was, in fact, assisting him.[4] Oliphant stated that Jennings directed him to list StellarOne Bank as the sole creditor, despite knowledge that Oliphant had other creditors, because StellarOne was attempting to foreclose. Again Jennings counseled Oliphant to ignore any correspondence from the United States Bankruptcy Court. On November 18, 2011, the Court issued an Order requiring Oliphant to appear on December 14, 2011, and show cause why the case should not be dismissed. When asked by the U.S. Trustee at the Hearing if he received this Order, Oliphant responded that he did and he either brought it to Jennings or called him about it and Jennings told him to pay no attention to the Order. This second case was dismissed on December 14, 2011, when Oliphant failed to appear or cure the deficiencies including failure to file schedules and statements and failure to pay the filing fees.

On February 6, 2012, less than two months after the dismissal of the previous filing, Oliphant's wife filed an individual *pro se* Chapter 13 petition, which was assigned case number

---

[3] Pursuant to 11 U.S.C. § 109(h)(1) the debtor must have received appropriate credit counseling within 180 days of the petition date. The September 24, 2011 certificate from Abacus Credit Counseling fell within the required time window for three of the four petitions.

[4] The Court found Mr. Oliphant to be a credible and forthcoming witness, yet completely trusting in the guidance he was obtaining from Mr. Jennings.

4

12-70193.  Ex. 21.  Oliphant stated that they were instructed by Jennings first to file a joint case, then he was to file individually, then she was to file individually, thus it was "her turn." Oliphant testified that he was present when Jennings provided his wife with the voluntary petition and when she completed and signed it at Jennings' direction.  There is some confusion over whether the petition was completed in Jennings' office or at the Clerk's Office, however Oliphant and his wife both testified that Jennings instructed them how to complete the petition. StellarOne was the sole creditor listed on this petition and Oliphant testified that Jennings instructed them to file this bankruptcy to stave off StellarOne.  Oliphant also said that Jennings advised his wife to file the same credit counseling certificate from the prior joint case and told her how to complete the Motion for Extension of Time for Payment of Filing Fees.  When they received the notice of hearing on the motion to dismiss with prejudice, Oliphant testified that they notified Jennings who said not to worry about it.  This case was dismissed on March 9, 2012, for failure to cure various deficiencies including failure to file schedules and statements and failure to pay the filing fees.  At that point Oliphant stated that he and his wife were concerned because they had lost two properties to foreclosure.  When they voiced their concerns to Jennings he told them that he would get their properties back.

Less than one month following the dismissal of Oliphant's wife's individual case and nearly one year after the Oliphants first retained Jennings' services, Oliphant filed the present case on April 6, 2012.  Ex. 2.  He testified that he filed because it was "his turn" according to the order of filings Jennings had determined.  When this case was filed the Oliphants had already lost four properties to foreclosure and Oliphant filed again in the hope that they would not lose the rest of their properties.  Oliphant testified that Jennings provided him with the voluntary petition, instructed him to file for Chapter 13 and list only StellarOne on the creditor matrix

5

despite knowledge of Oliphant's other creditors. Jennings directed Oliphant to complete another credit counseling course in order to obtain a new credit counseling certificate, as the first one – used three times – had expired. Oliphant said that Jennings pulled up the website on Jennings' computer in Jennings' office and he had Oliphant complete a new credit counseling course because a current certificate was required to file again. He also advised Oliphant to indicate that "[n]o assistance was provided" on the Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition and on how to complete and file the Motion for Extension of Time for Payment of Filing Fees. Ex. 3. Oliphant was again directed to ignore all mail received from the Court regarding his case, knowing full well the case would likely be dismissed for failure to complete the preliminary filing requirements.[5]

On May 2, 2012, the Court issued an order for Oliphant to appear and show cause why the case should not be dismissed with prejudice for failure to file required schedules and abuse of the bankruptcy process by serial filings. Oliphant testified that he called Jennings when he received this order and could not get Jennings to return his phone call. At that point, Oliphant retained counsel and Mark A. Black, Esq. filed a Motion for Enlargement of Time to File Schedules, Statement of Affairs, and Plan and a Motion to Impose Stay. Oliphant estimated that the net equity of the four properties he lost in foreclosure under Jennings' guidance totaled approximately $170,000.00 and they had paid Jennings $11,000.00 in fees.[6] On May 15, 2012, Mr. Black filed an amended petition page, the balance of schedules, and a Chapter 13 Plan. An Amended Plan was ultimately confirmed on October 31, 2012.

---

[5] At some point while the Oliphants were working with Jennings, Jennings was successful in obtaining a mortgage modification on one of their properties.
[6] Oliphant's testimony was that these properties were rental properties and the income was covering their expenses.

PROCEDURAL HISTORY

On May 31, 2013, the U.S. Trustee filed a motion against Jennings in the unrelated case of *In re Brown*, case number 13-70356. The U.S. Trustee's motion filed in that case was nearly identical to the Motion before the Court in the present case. The *Brown* case presented markedly similar circumstances regarding repeated skeletal filings in order to frustrate a mortgage creditor's attempts at foreclosure. The hearing on that motion was repeatedly continued at the request of Jennings in order for him to retain counsel. A portion of the hearing was held on July 22, 2013, and was adjourned because Jennings did not want to continue without counsel. At that hearing, Ms. Brown's case was dismissed with a restriction barring filing of any *pro se* petition for 365 days; however, the dismissal was deferred pending resolution of the motion against Jennings.

The U.S. Trustee filed the Motion in the present case on September 13, 2013, alleging violations of 11 U.S.C. §§ 105, 110, 526, and 527. A pre-trial conference was set for October 7, 2013, and the U.S. Trustee's motion in the *Brown* case had been continued to that same date. Jennings appeared at that hearing and stated that he had met with four different attorneys, none of whom would take the case. He represented that he had a consultation with an attorney in Northern Virginia on October 10, 2013, and asked for a continuance. The Court granted a continuance in both cases to November 12, 2013, and required Jennings to engage counsel and have such counsel file an answer no later than November 6, 2013. On November 8, 2013, Jennings filed letters in both cases requesting continuances on the basis that he had chosen an attorney to represent him, but needed additional time for the attorney to be able to file the appropriate documents. The letters were treated as motions to continue and were set for hearing on November 12, 2013. Jennings appeared on November 12, 2013, and asserted that he spoke to

7

his attorney twenty minutes prior to the hearing, but had not yet set up a meeting to retain him. The Court entered an Order in each case that required any counsel retained by Jennings to file notices of appearance and confer with the U.S. Trustee by November 26, 2013, to set a final hearing date.  If that was not done, the Motions would come back for hearing on December 9, 2013, and a final hearing date would be set regardless of whether Jennings had obtained representation.  On December 9, 2013, Jennings still had not obtained representation.  The remainder of the evidentiary hearing in the *Brown* case was set for December 30, 2013, and a final pre-trial conference was set in this case for January 27, 2014.  Jennings filed a letter on December 23, 2013, requesting that this case be consolidated and heard with the final portion of the *Brown* case on December 30, 2013.  This request was denied due to the factual differences and the procedural posture of each case.  The remainder of the hearing on the motion in the *Brown* case was concluded on December 30, 2013, the matter was taken under advisement, and a decision was entered on January 24, 2014.[7]

As to the present case, Jennings failed to appear at the final pre-trial conference on January 27, 2014, and the matter was continued for final hearing on February 27, 2014.  The continuance Order required that the parties exchange exhibit and witness lists by February 10, 2014, and also provided for admission of exhibits not previously objected to by February 17, 2014.  The U.S. Trustee filed an exhibit list containing thirty-five exhibits and a witness list on

---

[7] In *Brown*, which was decided by the Hon. William F. Stone, Jr., this Court treated Jennings as a "first offender," found him in violation of 11 U.S.C. § 110(i)(1)(B)(i), and awarded $2,000.00 in the nature of liquidated damages to the debtor.  As to §§ 110(l)(1) and (2) the Court found one violation, which fine was tripled due to his intentional failure to disclose, and fined Jennings and his company $1,500.00.  On March 31, 2013, the U.S. Trustee filed a Certification of Non-Compliance with the Court's ruling in *Brown* because her office had received no payment on the fine from Mr. Jennings.  She confirmed at the June 10, 2014, hearing that this was still true.  Judge Stone also found in *Brown* that there "appears to be no meaningful distinction between them [Financial Associates Enterprise Marketing, Inc. and Mark Jennings], and Mr. Jennings has not made any contention to the contrary."  The Court makes the same finding here.

February 10, 2014. The Court held an evidentiary hearing on the Motion on February 27, 2014, at which Jennings did not appear. The U.S. Trustee examined Oliphant and following the U.S. Trustee's closing argument the Court took the matter under advisement. A decision and order were entered on April 2, 2014 granting the U.S. Trustee's Motion.

On April 29, 2014, Jennings filed a letter that the Court treated as a request for rehearing which was set for hearing on May 5, 2014. It was then discovered that, due to a procedural defect, Jennings and FAEM had not received notice of the hearing on February 27, 2014.[8] Jennings' motion for rehearing was granted by order entered May 6, 2014, and a trial date was set on June 10, 2014. That Order also required Jennings and FAEM to file any exhibits or objections to the U.S. Trustee's exhibits by June 3, 2014, and ordered Jennings and FAEM to appear and show cause why they should not be permanently enjoined from operating directly or indirectly as bankruptcy petition preparers. That order further required that FAEM obtain legal counsel in order to be heard at the hearing and barred Mr. Jennings from appearing *pro se* as a representative of the corporate entity. On June 2, 2014, Jennings and FAEM each filed a request for a continuance on the basis that they needed more time to prepare for trial. These requests were denied by Order entered June 6, 2014. One day prior to the trial, on June 9, 2014, Jennings and FAEM filed identical motions to dismiss, which were not set for hearing, but were dealt with on June 10, 2014. The U.S. Trustee's Motion was heard on June 10, 2014, and was subsequently taken under advisement.

---

[8] Jennings and FAEM did receive notice of the January 27, 2014, pre-trial conference on which date the trial was set.

CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.

As an initial matter the Court will dispose of both motions to dismiss. The motions were untimely filed and lacked a basis in law and fact. Additionally, FAEM, a corporation, cannot appear without counsel and Jennings was previously barred from appearing *pro se* as a representative of the corporate entity. *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993). As such, both motions to dismiss will be denied.

Section 110(a)(1) of the Bankruptcy Code defines a "bankruptcy petition preparer" as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing" in a bankruptcy case. 11 U.S.C. § 110(a)(1). Section 110(a)(2) states, "'document for filing' means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court. . . ." 11 U.S.C. § 110(a)(2). Jennings was paid $1,000.00 per month in connection with a host of services provided toward the ultimate goal of achieving mortgage modifications. These services included providing copies of the voluntary petition to the Oliphants and assisting them in completing those forms. In addition, Jennings helped prepare Motions for Extension of Time for Payment of Filing Fee as well as Statements of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition. While Jennings did not complete the Statement of Assistance by Bankruptcy Petition Preparer in this case, he did complete the form for the Oliphants on one occasion. *See* Ex. 12. In it he stated, under penalty of perjury, that to the best

of his information and belief he assisted the debtors in connection with the preparation and filing of the case and was paid $0.00 for his assistance. Ex. 12. This statement of no compensation was a false representation to the Court in and of itself. Although Jennings failed to disclose his involvement in the three subsequent cases, his level of assistance appears consistent throughout the preparation and follow-through of all the various filings. These bankruptcy filings were a means to an end, the end being successful mortgage modifications. The filings were a tool employed by Jennings to garner more time and more leverage to negotiate with the Oliphants' mortgage creditors. As the testimony reflects, Jennings prepared a number of documents for filing in exchange for compensation; the Court finds that Jennings operated as a bankruptcy petition preparer.[9]

Section 110(b) imposes requirements on individuals acting as bankruptcy petition preparers. 11 U.S.C. § 110(b). In summary, bankruptcy petition preparers must sign the documents for filing, print their name and address, and provide certain notices before accepting fees. Section 110(c) also requires the bankruptcy petition preparer to place an identifying number on each document. 11 U.S.C. § 110(c). In the Oliphants' initial case Jennings completed and filed the Statement of Assistance by Bankruptcy Petition Preparer where he completed the name, address, telephone and social security number sections and signed the document. Except for that instance, Jennings has wholly failed to comply with the letter and spirit of Sections 110(b) and (c). Instead he has operated underground, as an undisclosed petition preparer, while receiving thousands of dollars in fees for his services.

---

[9] Jennings cannot be both tall and short. In *Brown*, he contended he was not a bankruptcy petition preparer, but Judge Stone found that he was. In Case No. 11-71976, Jennings signed a document stating that he was a bankruptcy petition preparer and since he provided essentially the same services throughout all four cases, the Court finds he was a bankruptcy petition preparer in each of them.

11

Section 110(e) sets forth restrictions on the services that can be offered by bankruptcy petition preparers:

> (1) A bankruptcy petition preparer shall not execute any document on behalf of a debtor.
> (2) (A) A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).
> (B) The legal advice referred to in subparagraph (A) includes advising the debtor –
> (i) whether –
> (I) to file a petition under this title; or
> (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;
> (ii) whether the debtor's debts will be discharged in a case under this title;
> (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title
> (iv) concerning –
> (I) the tax consequences of a case brought under this title; or
> (II) the dischargeability of tax claims;
> (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;
> (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or
> (vii) concerning bankruptcy procedures and rights.

11 U.S.C. § 110(e).

Based on Oliphant's testimony, Jennings advised him and his wife to file for bankruptcy, in order to avoid foreclosure, in violation of Section 110(e)(2)(B)(i)(I). He also advised them to file for Chapter 13 in violation of Section 110(e)(2)(B)(i)(II). It is unclear whether Jennings advised the Oliphants that their debts would be discharged, but he did advise them to stop making payments on their mortgages and that they would be able to retain their properties. This

12

advice amounts to violations of Sections 110(e)(2)(A) and (B)(iii). Jennings explicitly counseled the Oliphants on which creditors to include, and not include, on the creditor matrix in violation of Section 110(e)(2)(B)(vi). Finally he advised the Oliphants on every aspect of bankruptcy procedure from how to complete the petition to the ramifications of ignoring any further correspondence from the Bankruptcy Court regarding their case. Bluntly put, Jennings instructed the Oliphants how to "game the system" and manipulate the Court with their multiple filings. These facts clearly constitute a number of violations of Section 110(e)(2)(B)(vii).

Section 110(h) provides in part:

> (3) (A) The court shall disallow and order the immediate turnover to the bankruptcy trustee any fee referred to in paragraph (2) –
> (i) found to be in excess of the value of any services rendered by the bankruptcy petition preparer during the 12-month period immediately preceding the date of the filing of the petition; or
> (ii) found to be in violation of any rule or guideline promulgated or prescribed under paragraph (1).
> (B) All fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g).
> (C) An individual may exempt any funds recovered under this paragraph under section 522(b).
> (4) The debtor, the trustee, a creditor, the United States trustee (or the bankruptcy administrator, if any) or the court, on the initiative of the court, may file a motion for an order under paragraph (3).
> (5) A bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.

11 U.S.C. § 110(h). According to Oliphant, the services provided by Jennings had negative value, in that he lost four properties to foreclosure under Jennings' guidance that he may have otherwise saved. Oliphant testified that Jennings was charging $2,000.00 per mortgage modification and one of their mortgages was successfully modified with an interest reduction

from approximately 9%-11% down to 2.5%. The Court finds that Jennings' efforts resulted in some benefit to the Debtor. Thus, $9,000.00 in fees, representing the total paid within the 12-month period preceding the petition date of the case before the Court ($11,000.00) reduced by the value of the successful mortgage modification ($2,000.00), are found to be in excess of the value of services provided under Section 110(h)(3)(A)(i). All fees would be forfeitable under Section 110(h)(3)(B) due to Jennings' above mentioned violations of subsections (b), (c), and (e) of Section 110, however the Court finds that Jennings did add some value through his work for the Oliphants and will reduce the sanction accordingly.

> Section 110(i) provides for further damages:
>
>> (1) If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor –
>>> (A) the debtor's actual damages;
>>> (B) the greater of –
>>>> (i) $2,000; or
>>>> (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
>>> (C) reasonable attorneys' fees and costs in moving for damages under this subsection.
>> (2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

11 U.S.C. § 110(i). Pursuant to this provision of Section 110, the Court *shall* order Jennings to pay Oliphant his actual damages. The Court finds Oliphant's actual damages to be $9,000.00, pursuant to the reasoning set forth above. Additionally, the Court also finds Jennings' conduct to be fraudulent, unfair, and deceptive such that Jennings must pay the greater of $2,000.00 or

14

twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services. The Court finds that the amount awarded under Section 110(i)(1)(B)(ii) is $18,000.00. The U.S. Trustee did not seek attorneys' fees or costs with respect to this Motion.

Finally Section 110(l) sets forth:

> (1) A bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure.
> (2) The court shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer –
> > (A) advised the debtor to exclude assets or income that should have been included on applicable schedules;
> > (B) advised the debtor to use a false Social Security account number;
> > (C) failed to inform the debtor that the debtor was filing for relief under this title; or
> > (D) prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer.
> 
> (3) A debtor, trustee, creditor, or United States trustee (or the bankruptcy administrator, if any) may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.
> (4) (A) Fines imposed under this subsection in judicial districts served by United States trustees shall be paid to the United States trustees, who shall deposit an amount equal to such fines in the United States Trustee Fund. . . .

11 U.S.C. § 110(l). Jennings clearly failed to comply with subsection (e) in each of the four filings and also failed to comply with subsections (b) and (c) in the final three filings, resulting in a total of ten violations. The Court finds $500.00 per violation to be the appropriate fine, and this results in ten violations at $500.00 each for a total of $5,000.00 pursuant to Section 110(l)(1). However, pursuant to 11 U.S.C. § 110(l)(2)(D), the fine for failure to disclose his identity as a bankruptcy petition preparer on three occasions shall be tripled resulting in a total fine of $8,000.00, which includes seven fines of $500.00 each and three fines of $500.00 which

Document      Page 16 of 18

are trebled to $1,500.00 each. Thus, $3,500.00 plus $4,500.00 results in a total fine of $8,000.00 payable to the U.S. Trustee. All fines and sums payable shall be due jointly and severally from Jennings and FAEM.

Although the U.S. Trustee did not request injunctive relief, the Court notes that Jennings has failed to comply with the Court's Order of January 24, 2014, in the *Brown* case. The Court may raise the prospect of injunctive relief on its own initiative. 11 U.S.C. §§ 110(j)(2)(B) and (3).

> (j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.
> (2)  (A) In an action under paragraph (1), if the court finds that—
> 
>> (i) a bankruptcy petition preparer has—
>> 
>>> (I) engaged in conduct in violation of this section or of any provision of this title;
>>> (II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or
>>> (III) engaged in any other fraudulent, unfair, or deceptive conduct; and
>> 
>> (ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.
> 
> (B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty imposed under this section, or failed to disgorge all fees ordered by the court[,] the court may enjoin the person from acting as a bankruptcy petition preparer.

> (3) The court, as part of its contempt power, may enjoin a bankruptcy petition preparer that has failed to comply with a previous order issued under this section. The injunction under this paragraph may be issued on the motion of the court, the trustee, or the United States trustee (or the bankruptcy administrator, if any).

11 U.S.C. § 110(j). Jennings and FAEM were put on notice in this Court's order entered May 6, 2014, which specifically directed Jennings and FAEM to appear and show cause on June 10, 2014, why they should not be permanently enjoined from operating directly or indirectly as bankruptcy petition preparers. *In re Graves*, 279 B.R. 266, 275-76 (9th. Cir. BAP 2002).

> As relevant here, two determinations are necessary. First, the court must determine that the bankruptcy petition preparer has "continually engaged" in conduct described in § 110(j)(2)(A). Second, it must determine "that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of" title 11.

*Id.* at 277. FAEM did not appear at the hearing as it failed to obtain counsel and Jennings did not offer any reason why he should not be permanently enjoined from operating as a bankruptcy petition preparer. Throughout all proceedings Jennings has maintained that he has never acted as a bankruptcy petition preparer. Based on the actions of Jennings and FAEM the Court finds that each entity has "continually engaged" in violations of Section 110(j)(2)(A) by preparing a number of bankruptcy petitions and other filings, both in this case and the *Brown* case, while defrauding the Court and the Debtors. The Court also finds that, due to Jennings' inability or unwillingness to realize his actions were improper and in violation of the law, an injunction designed to prevent future violations alone would not be sufficient to protect the public from his actions. Additionally, the Court finds that Jennings and FAEM failed to comply with this Court's previous order requiring payment of fines under Section 110 in the *Brown* case. 11

U.S.C. §§ 110(j)(3).  As such, Jennings and FAEM are permanently enjoined from operating as bankruptcy petition preparers in the Western District of Virginia.

An appropriate Order will issue.

Decided this 23rd day of June, 2014.

_____
UNITED STATES BANKRUPTCY JUDGE